LEE LITIGATION GROUP, PLLC
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUCIO BARRAGAN, NEMECIO CALDERON,
RODOLFO HERNANDEZ MORA,
ROSIBEL SOLORZANO ROJAS,
FRANKIE GIL, LUIS HERNANDEZ,
VALENTIN MIRANDA, and
MELISSA BURGSTAHLER
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

                        Plaintiffs,

                    v.

OFF CUTS, LLC
       d/b/a QUALITY EATS,
BACON & BAGELS, LLC
       d/b/a QUALITY EATS,
PEANUT BUTTER & KIMCHEE LLC
       d/b/a QUALITY EATS,
FOURTH WALL RESTAURANTS, LLC,
       d/b/a QUALITY BRANDED,
ELVIN PAVLENKO and
MICHAEL J. STILLMAN

                    Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

 Jury Trial Demanded

Plaintiffs, LUCIO BARRAGAN, NEMECIO CALDERON, RODOLFO HERNANDEZ

MORA, ROSIBEL SOLORZANO ROJAS, FRANKIE GIL, LUIS HERNANDEZ, VALENTIN

MIRANDA, and MELISSA BURGSTAHLER (collectively "Plaintiffs"), on behalf of themselves

and others similarly situated, by and through her undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, OFF CUTS LLC, d/b/a QUALITY EATS, BACON & BAGELS LLC, d/b/a QUALITY EATS, PEANUT BUTTER & KIMCHEE LLC, d/b/a QUALITY EATS, FOURTH WALL RESTAURANTS, LLC, d/b/a QUALITY BRANDED (collectively "Corporate Defendants"), ELVIN PAVLENKO and MICHAEL J. STILLMAN ("Individual Defendant," and together with Corporate Defendants, "Defendants"), and states as follows:

## **INTRODUCTION**

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages due to invalid tip credit, (3) unpaid spread of hours premiums (4) liquidated damages, (5) statutory penalties and (6) attorneys' fees and costs.

3.      Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN further allege that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiffs are entitled to recover from Defendants for discrimination on the basis of national origin: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

4.      Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN further allege that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiffs are entitled to recover from Defendants for discrimination

on the basis of national origin: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive

damages and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b),

28U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. §1367.

6.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.    Plaintiff, LUCIO BARRAGAN, for all relevant time periods, was a resident of

Queens County, New York.

8.    Plaintiff, NEMECIO CALDERON, for all relevant time periods, was a resident of

Hudson County, New Jersey.

9.    Plaintiff, RODOLFO HERNANDEZ MORA, for all relevant time periods, was a

resident of Queens County, New York.

10.    Plaintiff, ROSIBEL SOLORZANO ROJAS, for all relevant time periods, was a

resident of Queens County, New York.

11.    Plaintiff, FRANKIE GIL, for all relevant time periods was a resident of Richmond

County, New York.

12.    Plaintiff, LUIS HERNANDEZ, for all relevant time periods was a resident of

Queens County, New York.

13.    Plaintiff VALENTIN MIRANDA, for all relevant time periods was a resident of

Queens County, New York.

14.    Plaintiff MELISSA BURGSTAHLER for all relevant time periods was a resident of New York County, New York.

15.    Defendants operate a restaurant chain under the trade name "Quality Branded" at the following locations:

a.  19 Greenwich Avenue, New York, NY 10014 ("West Village Quality Eats");

b.  1496 Second Avenue, New York, NY 10075 ("Upper East Side Quality Eats");

c.  3 East 28th Street, New York, NY 10016 ("NoMad Quality Eats");

d.  57 West 57th Street, New York, NY 10019 ("Quality Italian Steakhouse");

e.  57 West 58th Street, New York, NY 10019 ("Quality Meats");

f.  120 W 55th Street, New York, NY 10019 ("Quality Bistro");

g.  103 Greenwich Avenue, New York, NY 10014 ("Don Angie");

h.  797 3rd Avenue, New York, NY 10022 ("Smith & Wollensky");

i.  37 East 50th Street, New York, NY 10022 ("Maloney & Porcelli");

j.  26th Street at Park Avenue South, New York, NY 10010 ("Park Avenue");
(collectively, the "Restaurants").

Defendants operate the Restaurants as a single integrated enterprise, under the control of their owner, Individual Defendant MICHAEL J. STILLMAN. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

a.  All the Restaurants are jointly owned and operated by the FOURTH WALL RESTAURANTS, LLC d/b/a QUALITY BRANDED. *See* **Exhibit A** for a brief history of the relationships between "Quality Branded" and the Restaurants. *See* **Exhibit B** for the Quality Branded's executive team which oversees and operates all the Restaurants.

b.  All the Restaurants share the same brand name with the same logo (Quality Branded) and are marketed jointly on one (1) common website: www.qualitybranded.com ("Website"). *See* **Exhibit C** for the joint advertisement of all the Restaurants on the Website, sharing the same brand name and logo of Quality Branded on the Website.

c.  All the Restaurants are owned and operated under the control of Individual Defendant, MICHAEL J. STILLMAN, who is the Founder and President of Quality Branded. *See* **Exhibit D** for a professional background of the Founder and President, as exhibited on the Website.

d.  Prior to opening, all new Quality Branded's Restaurants must be approved by Individual Defendant, MICHAEL J. STILLMAN.

e.  All the Restaurants receive legal advice from the General Counsel of Quality Branded, Jennifer Rackoff, who oversees legal compliance for all the Restaurants. *See* **Exhibit E** for a professional background of the General Counsel, as exhibited on the Website. *See* **Exhibit F** for the common legal terms and conditions, privacy policy, and accessibility policy of all the Restaurants.

f.  All the Restaurants have the same Chief Financial Officer, Steven Jolton, who oversees the financial matters of all the Restaurants. *See* **Exhibit G** for a professional background of the Chief Financial Officer, as exhibited on the Website.

g.  All paychecks of Restaurant employees are issued through the payroll department of Quality Branded. All the Restaurants have the same Director of Human Resources, Susan Spikes, who oversees the human resources matters of

all the Restaurants. *See* **Exhibit H** for a professional background of the Director of Human Resources, as exhibited on the Website.

h.  All the Restaurants use a central marketing department. *See* **Exhibit I** for the a professional background of the VP of Marketing and Communications, Allison Good, as exhibited on the Website.

i.  All the Restaurants' locations and hours of operation are accessible by clicking on the respective restaurant links on the Website. All the Restaurants' menus are accessible by clicking on the respective restaurant links on the Website. *See* **Exhibit C** for the named links of all the Restaurants on the Website.

j.  All the Restaurants share a common look and feel that have been inspired by a "reinterpret[ation of] the quintessential American culinary experience through a modern lens." *See* **Exhibit A** for a brief description of the common theme running across all the Restaurants.

k.  All the Restaurants share a common "Contact Us" webpage on the Website, where one (1) common inquiry form is shared for all the Restaurants. *See* **Exhibit J** for the "Contact Us" webpage on the Website.

l.  All the Restaurants jointly sell one (1) common gift card that is available for use at any of the Restaurants. *See* **Exhibit K** for the gift card ordering form on the Website.

m.  All the Restaurants allow reservations on the common Website. *See* **Exhibit L** for the Website's reservation booking form.

n.  All the Restaurants jointly offer one (1) common email newsletter for all the Restaurants. *See* **Exhibit M** for the newsletter signup form.

o.  All the Restaurants offer their venues for private parties and events on the Website, using one (1) common request form. Private event options and prices are similar between the Restaurants. *See* **Exhibit N** for one (1) common private events form of all the Restaurants. Specifically, on the Website, guests can click on the restaurant name on top of the events form, and then fill out the requested information for booking a private event.

p.  All the Restaurants are marketed jointly on their social media account, Instagram: https://www.instagram.com/qualityfamilymeal/. *See* **Exhibit O** for the joint Instagram account.

q.  All the Restaurants jointly offer VIP options on the Website. *See* **Exhibit P** for the Restaurants' VIP login webpage.

r.  Five (5) of the Restaurants jointly run a wine week, in which each of the Restaurants offer certain wines on a given workday of the week, from Monday to Friday. *See* **Exhibit Q** for details of the wine week, exhibited on the Website.

s.  All the Restaurants share one (1) common system for careers and job applications on the Website. *See* **Exhibit R** for the careers webpage on the Website.

t.  All the Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) whenever one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs.

u. Employees were regularly required to transport items between Restaurant locations, in accordance with the directives of central management, including the Individual Defendant, MICHAEL J. STILLMAN.

Individual Defendant MICHAEL J. STILLMAN owns and operates each Corporate Defendant.

16. Corporate Defendants:

a. OFF CUTS, LLC d/b/a QUALITY EATS is a domestic limited liability company organized under the laws of New York, with a service of process address located at OFF CUTS, LLC c/o FOURTH WALL RESTS, LLC 880 Third Avenue, 4th Floor, New York, NY 10022, and principal place of business located at 19 Greenwich Avenue, New York, NY 10014.

b. BACON & BAGELS, LLC d/b/a QUALITY EATS is a foreign limited liability company organized under the laws of Delaware, with a service of process address located at c/o STEVEN JOLTON QUALITY BRANDED 880 Third Avenue, 4th Floor, New York, NY 10022 and principal place of business located at 1496 Second Avenue, New York, NY 10075.

c. PEANUT BUTTER & KIMCHEE LLC d/b/a QUALITY EATS is a foreign limited liability company organized under the laws of Delaware, with a service of process address located at c/o STEVEN JOLTON QUALITY BRANDED 880 Third Avenue, 4th Floor, New York, NY 10022 and principal place of business located at 3 East 28th Street, New York, NY 10016.

d. FOURTH WALL RESTAURANTS, LLC d/b/a QUALITY BRANDED is a domestic limited liability company organized under the laws of New York, with

a service of process address and principal place of business located at 880 Third

Avenue, 4th Floor, New York, NY 10022.

17.    Individual Defendant MICHAEL J. STILLMAN is an owner and principal of

Corporate Defendants. MICHAEL J. STILLMAN exercised control over the employment terms

and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class members. MICHAEL J.

STILLMAN had and exercised the power and authority to (i) fire and hire, (ii) determine rate and

method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment

of Plaintiffs, FLSA Collective Plaintiffs, and Class members. At all times, employees could

complain to MICHAEL J. STILLMAN regarding any of the terms of their employment, and

MICHAEL J. STILLMAN would have the authority to effect any changes to the quality and terms

of their employment. MICHAEL J. STILLMAN ensured that employees effectively served

customers and exercised functional control over the business and financial operations of Corporate

Defendants. MICHAEL J. STILLMAN had the power and authority to supervise and control

supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand

employees.

18.    Individual Defendant ELVIN PAVLENKO is a supervisor and executive chef of

Corporate Defendant OFF CUTS, LLC. ELVIN PAVLENKO exercised control over the

employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs, and Class members.

ELVIN PAVLENKO had and exercised the power and authority to (i) fire and hire, (ii) determine

rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of

employment of Plaintiffs, FLSA Collective Plaintiffs, and Class members. At all times, employees

could complain to ELVIN PAVLENKO regarding any of the terms of their employment, and

ELVIN PAVLENKO would have the authority to effect any changes to the quality and terms of

their employment. ELVIN PAVLENKO ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. ELVIN PAVLENKO had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

19.    At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

20.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

21.    At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.    Plaintiffs LUCIO BARRAGAN, NEMECIO CALDERON, RODOLFO HERNANDEZ MORA, ROSIBEL SOLORZANO ROJAS, FRANKIE GIL, LUIS HERNANDEZ, VALENTIN MIRANDA, and MELISSA BURGSTAHLER bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to cooks, line cooks, bartenders, barbacks, servers, food preparers, porters and dishwashers) employed by Defendant on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

23.    At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

them compensation for all regular and overtime hours worked due to a policy of time shaving..

24.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## <u>RULE 23 CLASS ALLEGATIONS – NEW YORK</u>

25.    Plaintiffs LUCIO BARRAGAN, NEMECIO CALDERON, RODOLFO HERNANDEZ MORA, ROSIBEL SOLORZANO ROJAS, FRANKIE GIL, LUIS HERNANDEZ, VALENTIN MIRANDA, and MELISSA BURGSTAHLER bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to cooks, line cooks, bartenders, barbacks, servers, food preparers, porters and dishwashers), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

26.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

27.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff MELISSA BURGHSTAHLER is a member of both the Class and the Tipped Subclass.

28.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages due to time-shaving, (ii) failing to provide Class members with proper wage statements with every payment of wages, and (iii) failing to properly provide notices to Class members, at date of hiring and annually, per requirements of the NYLL.

29.    With regard to Plaintiff MELISSA BURGSTAHLER and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime as Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. The Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (iii) failed to accurately keep track of daily tips earned and maintain records thereof.

30.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages

arising from the same unlawful policies, practices and procedures.

31.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is

empowered to, fashion methods to efficiently manage this action as a class action.

33.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)    Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

e)    Whether Defendants properly compensated Plaintiffs and Class members their spread of hours premium when working days in excess of ten (10) hours;

f)    Whether Defendants caused time-shaving by paying Plaintiffs and Class members only for those hours which they were scheduled to work, rather than for the actual hours that they worked, including hours over forty (40);

g)  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

h)  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i)  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j)  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

k)  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

## **STATEMENT OF FACTS**

### ***Plaintiff ROSIBEL SOLORZANO ROJAS***

35.  In or around September 2015, Plaintiff ROSIBEL was hired by Defendants as a salad and pastry preparer for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014.

36.  From the start of her employment until October 31, 2018, Plaintiff ROSIBEL worked five (5) days per week, Mondays to Wednesdays, Saturdays and Sundays from 3:00 p.m. to 12:00 a.m. for a total of forty-five (45) hours per week. At all times, Plaintiff worked without any lunch breaks.

37.  From November 1, 2018 to the present, Plaintiff ROSIBEL worked five (5) days

per week, Mondays to Wednesdays from 3:30 p.m. to 11:00 p.m. and Saturdays and Sundays from 8:00 a.m. to 4:00 p.m. for a total of thirty-eight and a half (38.5) hours per week.

38.     Throughout Plaintiff ROSIBEL's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff ROSIBEL did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result, Plaintiff ROSIBEL suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff ROSIBEL's hours by three and a half (3.5) hours per week. As a result, Plaintiff suffered from a total of six (6) hours of time-shaving per workweek.

39.     From the start of her employment until May 31, 2018, Plaintiff ROSIBEL was compensated at a rate of $13.00 per hour. From June 1, 2018 to June 30, 2018, Plaintiff ROSIBEL was compensated at a rate of $16.00 per hour. From July 1, 2018 to the present, Plaintiff ROSIBEL is compensated at a rate of $17.50 per hour.

40.     While employed by Defendants, Plaintiff ROSIBEL did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

41.     Throughout her employment by Defendants, Plaintiff ROSIBEL did not receive any proper wage statements. The wage statements that Plaintiff ROSIBEL received from Defendants did not accurately state Plaintiff ROSIBEL's weekly hours. Similarly, Class members never received proper wage statements.

***Plaintiff LUCIO BARRAGAN***

42.    In or around June 2018, Plaintiff LUCIO was hired by Defendants as a grill-man for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014. Plaintiff LUCIO's employment was terminated in or around July 2019.

43.    From the start of his employment until his termination, Plaintiff LUCIO worked five (5) days per week, Mondays and Thursdays to Saturdays from 3:30 p.m. to 12:00 a.m. and Sundays from 9:00 a.m. to 4:00 p.m. for a total of forty-one (41) hours per week.

44.    Throughout Plaintiff LUCIO's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff LUCIO did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result, Plaintiff LUCIO suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff LUCIO's hours by three and a half (3.5) hours per week. As a result, Plaintiff LUCIO suffered from a total of six (6) hours of time-shaving per workweek.

45.    Throughout his employment Plaintiff LUCIO was compensated at a rate of $17.00 per hour, and at a rate of $25.50 per overtime hour.

46.    While employed by Defendants, Plaintiff LUCIO did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

47.    Throughout his employment by Defendants, Plaintiff LUCIO did not receive any proper wage statements. The wage statements that Plaintiff LUCIO received from Defendants did

not accurately state Plaintiff LUCIO's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff NEMECIO CALDERON*

48.    In or around June 2018 through the present, Plaintiff NEMECIO was hired by Defendants as a line cook for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014.

49.    From the start of his employment until May 31, 2017, Plaintiff NEMECIO worked five (5) days per week, Tuesdays to Saturdays from 8:00 a.m. to 5:00 p.m. for a total of forty-five (45) hours per week.

50.    From June 1, 2017 through the present, Plaintiff NEMECIO worked five (5) days per week, Tuesdays to Fridays from 2:30 p.m. to 11:00 p.m. and Saturdays from 8:00 a.m. to 5:00 p.m. for a total of forty-three (43) hours per week.

51.    Throughout Plaintiff NEMECIO's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff NEMECIO did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result, Plaintiff NEMECIO suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff NEMECIO's hours by three and a half (3.5) hours per week. As a result, Plaintiff members suffered from a total of six (6) hours of time-shaving per workweek.

52.    From the start of his employment to December 31, 2015, Plaintiff NEMECIO was compensated at a rate of $12.00 per hour. From January 1, 2016 until May 31, 2016, Plaintiff

NEMECIO was compensated at a rate of $13.00 per hour. From June 1, 2016 until May 31, 2017, Plaintiff NEMECIO was compensated at a rate of $15.00 per hour. From June 1, 2017 to May 31, 2018, Plaintiff NEMECIO was compensated at a rate of $18.00 per hour. From June 2018 to the present, Plaintiff NEMECIO was compensated at a rate of $19.00 per hour.

53.     While employed by Defendants, Plaintiff NEMECIO did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

54.     Throughout his employment by Defendants, Plaintiff NEMECIO did not receive any proper wage statements. The wage statements that Plaintiff NEMECIO received from Defendants did not accurately state Plaintiff NEMECIO's weekly hours. Similarly, Class members never received proper wage statements.

### Plaintiff *RODOLFO HERNANDEZ MORA*

55.     In or around June 2018, Plaintiff RODOLFO was hired by Defendants as a dishwasher for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014. Plaintiff RODOLFO's employment was terminated in or around August 2019.

56.     Throughout his employment, Plaintiff RODOLFO worked five (5) days per week, Mondays to Wednesdays from 5:00 p.m. to 2:00 a.m. and Saturdays and Sundays from 8:00 a.m. to 6:00 p.m. for a total of forty-seven (47) hours per week.

57.     Throughout Plaintiff RODOLFO's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff RODOLFO did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result,

Plaintiff RODOLFO suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff RODOLFO's hours by three and a half (3.5) hours per week. As a result, Plaintiff suffered from a total of six (6) hours of time-shaving per workweek.

58.    Throughout his employment Plaintiff RODOLFO was compensated at a rate of $15.00 per hour.

59.    While employed by Defendants, Plaintiff RODOLFO did not receive his spread of hours premium payments, even though he regularly worked shifts exceeding ten (10) hours in duration.

60.    While employed by Defendants, Plaintiff RODOLFO did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

61.    Throughout his employment by Defendants, Plaintiff RODOLFO did not receive any proper wage statements. The wage statements that Plaintiff RODOLFO received from Defendants did not accurately state Plaintiff RODOLFO's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff FRANKIE GIL*

62.    In or around March 2018, Plaintiff FRANKIE was hired by Defendants as a line cook for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014. Plaintiff FRANKIE's employment was terminated in or around July 2019.

63.    Throughout his employment, Plaintiff FRANKIE worked five (5) days per week, Mondays and Thursdays to Saturdays from 3:00 p.m. to 1:00 a.m. and Sundays from 3:30 p.m. to 11:00 p.m. for a total of forty-seven and a half (47.5) hours per week.

64.    Throughout Plaintiff FRANKIE's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff FRANKIE did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result, Plaintiff FRANKIE suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff FRANKIE's hours by three and a half (3.5) hours per week. As a result, Plaintiff suffered from a total of six (6) hours of time-shaving per workweek.

65.    From the start of his employment until February 28, 2019, Plaintiff was compensated at a rate of $15.00 per hour. From March 1, 2019 until Plaintiff's termination in July 2019, Plaintiff was compensated at a rate of $16.00 per hour.

66.    While employed by Defendants, even though Plaintiff FRANKIE regularly worked shifts exceeding ten (10) hours in duration, he did not receive his "spread of hours" premiums within seven (7) days of the end of the week in which he earned them, in violation of NYLL § 191(1)(a)(i). Plaintiff FRANKIE, as a line cook, is a manual worker under the NYLL and must receive his wages weekly. *See* NYLL § 191(1)(a)(i). Plaintiff FRANKIE received a check with his spread of hours payments on December 4, 2019, despite earning those payments between April 2018 and August 2019. *See* **Exhibit S.** Plaintiff FRANKIE is owed liquidated damages equal to the late spread of hours payments and accrued interest on the delayed payments.

67.    While employed by Defendants, Plaintiff FRANKIE did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

68.    Throughout his employment by Defendants, Plaintiff FRANKIE did not receive proper wage statements. The wage statements that Plaintiff FRANKIE received from Defendants did not accurately state Plaintiff FRANKIE's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff LUIS HERNANDEZ*

69.    In or around May 2018, Plaintiff LUIS was hired by Defendants as a line cook for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014. Plaintiff VALENTIN's employment was terminated in or around May 2019.

70.    Throughout his employment, Plaintiff LUIS worked five (5) days per week, Mondays through Wednesdays and Fridays and Saturdays from 4:00 p.m. to 12:00 a.m. for a total of forty (40) hours per week.

71.    Throughout Plaintiff LUIS's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff LUIS did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. Thus, Plaintiff LUIS suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff LUIS's hours by three and a half (3.5) hours per week. As a result, Plaintiff LUIS suffered from a total of six (6) hours of time-shaving per workweek.

72.     From the start of his employment through December 31, 2018, Plaintiff LUIS was compensated at a rate of $17.00 per hour. From January 1, 2019 until his termination in or around May 2019, Plaintiff LUIS was compensated at a rate of $18.50 per hour.

73.     While employed by Defendants, even though Plaintiff LUIS regularly worked shifts exceeding ten (10) hours in duration, he did not receive his "spread of hours" premiums within seven (7) days of the end of the week in which he earned them, in violation of NYLL § 191(1)(a)(i). Plaintiff LUIS, as a line cook, is a manual worker under the NYLL and must receive his wages weekly. *See* NYLL § 191(1)(a)(i). Plaintiff LUIS received a check with his spread of hours payment on December 4, 2019, despite earning that payment sometime in 2018, over a year after he earned it. *See* **Exhibit T.** Plaintiff LUIS is owed liquidated damages equal to the late spread of hours payments and accrued interest on the delayed payments.

74.     While employed by Defendants, Plaintiff LUIS did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

75.     Throughout his employment by Defendants, Plaintiff LUIS did not receive any proper wage statements. The wage statements that Plaintiff LUIS received from Defendants did not accurately state Plaintiff LUIS's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff VALENTIN MIRANDA*

76.     In or around June 2018, Plaintiff VALENTIN was hired by Defendants as a cook for Defendants' restaurant, West Village Quality Eats, located at 19 Greenwich Avenue, New York, NY 10014. Plaintiff VALENTIN's employment was terminated in or around July 2019.

77.     Throughout his employment, Plaintiff VALENTIN worked five (5) days per week,

Tuesdays, Wednesdays, Saturdays and Sundays from 3:30 p.m. to 12:00 a.m. and Fridays from 8:00 a.m. to 4:00 p.m. for a total of forty-two (42) hours per week.

78.     Throughout Plaintiff VALENTIN's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff VALENTIN did not have an opportunity to take her meal break and was required to work through her meal break. As a result, this break was not a free and clear meal break. As a result, Plaintiff VALENTIN suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break. In addition, Defendants arbitrarily reduced Plaintiff VALENTIN's hours by three and a half (3.5) hours per week. As a result, Plaintiff VALENTIN suffered from a total of six (6) hours of time-shaving per workweek.

79.     Throughout his employment Plaintiff VALENTIN was compensated at a rate of $16.00 per hour.

80.     While employed by Defendants, Plaintiff VALENTIN did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

81.     Throughout his employment by Defendants, Plaintiff VALENTIN did not receive any proper wage statements. The wage statements that Plaintiff VALENTIN received from Defendants did not accurately state Plaintiff VALENTIN's weekly hours. Similarly, Class members never received proper wage statements.

### *Plaintiff MELISSA BURGSTAHLER*

82.     In or around July 2017, Plaintiff MELISSA was hired by Defendants as a bartender for Defendants' "Upper East Side Quality Eats," located at 1496 Second Avenue, New York, NY

10075. In or around January 2018, Plaintiff MELISSA was transferred to the "NoMad Quality Eats," located at 3 East 28th Street, New York, NY 10016, to be the head bartender. Plaintiff MELISSA's employment was terminated in or around January 2019.

83.     From the start of her employment until January 2017, Plaintiff worked from 3:00pm to 12:00pm, for four (4) days per week. Approximately twice per week, Plaintiff was required to work a double shift, from 9:00am to 10:00pm, instead of her regular shift. As a result, Plaintiff worked approximately forty-four (44) hours per week.

84.     Starting in January 2018 through the end of her employment, when Plaintiff MELISSA started working at NoMad Quality Eats, she was scheduled to work from 3:00pm to 12:00pm, for four (4) days per week and 9:00am to 10:00pm one (1) day a week, for a total of forty-nine (49) hours.

85.     Throughout Plaintiff MELISSA's employment by Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff MELISSA did not have an opportunity to take her meal break and was required to work through her meal break. Thus, this break was not a free and clear meal break. As a result, Plaintiff MELISSA suffered from two and a half (2.5) hours of time-shaving per workweek. Similarly, FLSA Collective Plaintiffs and Class member were not permitted to take a free and clear meal break.

86.     From the start of her employment until December 31, 2017, Plaintiff MELISSA was paid at a tip credit minimum wage of $7.50 dollars per hour, with Defendants claiming $3.50 in tip credits. From January 2018 until December 31, 2018, Plaintiff MELISSA was typically paid at a tip credit hourly rate of $10.85 per hour, with Defendants claiming a tip credit of $4.50, which is an invalid tip credit over the legal New York tip credit rate of $4.35. From January 2019 until

her termination, Plaintiff MELISSA was paid an hourly rate of $16.00 dollars per hour, with Defendants claiming $5.00 in tip credits.

87.    Throughout her employment, managers collected all the cash tips and redistributed the cash and credit card tips the day after. However, Plaintiff MELISSA's checks would always come out to be $0, no matter how many hours she worked, as Defendants would deduct her tips from her gross pay.

88.    While employed by Defendants, Plaintiff MELISSA did not receive a proper wage notice upon hiring, or upon changes in the information in the notice thereafter. Similarly, Class members never received wage and hour notices.

89.    Throughout her employment by Defendants, Plaintiff MELISSA did not receive any proper wage statements. The wage statements that Plaintiff MELISSA received from Defendants did not accurately state Plaintiff MELISSA's weekly hours. Similarly, Class members never received proper wage statements.

*          *          *

90.    At all relevant times, Defendants unlawfully failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked each workweek, due to a policy of time-shaving, resulting in unpaid wages and unpaid overtime premiums for hours worked over forty (40).

91.    Plaintiff MELISSA and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff MELISSA and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips

actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) failed to accurately track daily tips earned or maintain records thereof, (vi) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (vii) failed to provide a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

92.    At all relevant times, Defendants unlawfully failed to pay Plaintiff RODOLFO, Plaintiff MELISSA, and Class members their spread of hours premium when they worked shifts exceeding ten (10) hours in duration, as required by the NYLL.

93.    At all relevant times, Defendants unlawfully failed to pay Plaintiff LUIS and Plaintiff FRANKIE their spread of hours premiums within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i). Plaintiff LUIS and FRANKIE are owed liquidated damages equal to the late payments and accrued interest on the delayed payments.

94.    At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage notices, at the beginning of employment and annually thereafter, as required by the NYLL.

95.    At no time during the relevant time periods did Defendants provide Plaintiff or Class members with proper wage statements as required by the NYLL. Plaintiff and Class members received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked.

96.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

97.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required by the NYLL.

98.     During Plaintiffs LUCIO BARRAGAN, NEMECIO CALDERON, RODOLFO HERNANDEZ MORA, ROSIBEL SOLORZANO ROJAS, LUIS HERNANDEZ and VALENTIN MIRANDA's employment by Defendants, Defendants permitted managerial employees to foster a hostile work environment.

99.     In or around November 2018, ELVIN PAVLENKO was hired as the new executive chef. Chef PAVLENKO proceeded to create a hostile work environment and targeted Hispanic employees, or those perceived to be Hispanic.

100.    Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN are all employees of Hispanic descent and all suffered severe and pervasive discrimination based on their national origin while employed by Defendants.

101.    Chef PAVLENKO specifically targeted and verbally abused the Hispanic employees. Chef PAVLENKO would threaten the Hispanic employees and yell: "I'm going to fire all Hispanics and bring white people."  When any of the Hispanic employees, made a mistake with orders, Chef PAVLENKO would curse at them and yell "fucking Hispanics" at them.

102.     Chef PAVLENKO would also give Hispanic employees the least desirable work schedules and give them heavier workloads than other employees. Chef PAVLENKO would pressure and scream at the Hispanic employees to work faster, while not saying anything to any of the other employees who were working slowly, causing the Hispanic employees to fear for their

job security as they believed they would be terminated before any non-Hispanic employees due to Chef PAVLENKO's hostile work environment. In addition, Chef PAVLENKO would purposefully assign Hispanic employees the least desirable and most inconvenient shifts, to prevent Hispanic employees from having second jobs.

103.    As a result of the hostile work environment Chef PAVLENKO fostered, all of the Hispanic employees felt scared and powerless as they believed they could be terminated at any time and they felt even more reluctant to complain to Chef PAVLENKO or management due to their fear of retaliation.

104.    Plaintiffs and other employees would complain to management about Chef PAVLENKO's actions, but no actions were taken regarding their complaints. This created a toxic and abusive work environment where the Hispanic employees were intimidated and had to endure constant abuse and discrimination.

105.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

106.    Plaintiffs reallege and reaver Paragraphs 1 through 105 of this Class and Collective Action Complaint as if fully set forth herein.

107.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

108.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

109.    At all relevant times, the Defendants had gross annual revenues in excess of $500,000.

110.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked due to Defendants' policy of time shaving.

111.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

112.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, when Defendants knew or should have known such was due.

113.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

114.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

115.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time shaving, plus an equal amount as liquidated damages.

116.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

117.     Plaintiffs reallege and reaver Paragraphs 1 through 116 of this Class and Collective Action Complaint as if fully set forth herein.

118.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

119.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them wages in the lawful amount for all hours worked due to time shaving.

120.     Defendants willfully violated Plaintiff MELISSA and the Tipped Subclass members' rights by failing to pay them wages in the lawful amount for all hours worked due to an invalid tip credit.

121.     Defendants willfully violated Plaintiff RODOLFO, Plaintiff MELISSA and Class members' rights by failing to pay them their spread of hours premium when they worked shifts exceeding ten (10) hours in duration.

122.     Defendants willfully violated Plaintiff LUIS and Plaintiff FRANKIE's rights by failing to pay them their spread of hours premium within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

123.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

124.    Defendants knowingly and willfully failed to provide proper wage and hour notices to employees at the beginning of employment and annually thereafter pursuant to the requirements of the NYLL.

125.    Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants' unpaid wages due to time-shaving, unpaid wages due to invalid tip credit, unpaid spread of hours premiums, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

126.    Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN reallege and reaver Paragraphs 1 through 125 of this Class and Collective Action Complaint as if fully set forth herein.

127.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of national origin.

128.    Plaintiffs are employees and qualified persons within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

129.    Defendants operated a business that discriminated against Plaintiffs in violation of the NYSHRL by subjecting Plaintiffs to a hostile work environment, in the form of failing to address the constant verbal abuse and threats made to Plaintiffs on the basis of their national

origin.

130.    Defendants' conduct was intentional, malicious and in reckless disregard of Plaintiffs' protected rights under the New York Executive Law § 296.

131.    As a result of Defendants' unlawful discriminatory practices, Plaintiffs sustained injury, including economic damages and past and future physical and emotional distress.

132.    Due to Defendants' violations under the NYSHRL, Plaintiffs are entitled to recover from Defendants: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys fees' and costs.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

133.    Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN reallege and reaver Paragraphs 1 through 132 of this Class and Collective Action Complaint as if fully set forth herein.

134.    The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of national origin.

135.    Defendants have and have had at all relevant times herein, at least four (4) persons in their employ. Plaintiffs are employees and qualified persons within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

136.    Defendants operated a business that discriminated against Plaintiffs in violation of the NYCHRL by subjecting Plaintiffs to a hostile work environment, in the form of failing to address the constant verbal abuse and threats made to Plaintiffs on the basis of their national origin.

137.    As a result of Defendants' unlawful employment practice, Plaintiffs sustained injury, including economic damages, past and future physical and emotional distress and the costs of bringing this action.

138.    Due to Defendants' violations under the NYCHRL, as amended, based on discrimination on the basis of age, Plaintiffs are entitled to recover from Defendants: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages, and (5) attorneys' fees and costs.

## COUNT V

## DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (SUPERVISOR LIABILITY)

139.    Plaintiffs LUCIO, NEMECIO, RODOLFO, ROSIBEL, LUIS and VALENTIN reallege and reaver Paragraphs 1 through 138 of this Class and Collective Action Complaint as fully set forth herein.

140.    Under the NYCHRL, Administrative Code Title 8-107(13), an employer is liable for the discriminatory conduct by an employee, agent or independent contractor. The relevant code provides:

(a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
(b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
(1) the employee or agent exercised managerial or supervisory responsibility; or
(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

141.    Defendants violated the section cited herein as set forth as chef ELVIN PAVLENKO was a supervisor in a managerial capacity, who had the ability to set employees schedules and terminate employees. Chef PAVLENKO discriminated against Plaintiffs based on their national origin by constantly verbally harassing and threatening Hispanic employees, pressuring them to work faster, giving Hispanic employees the least desirable work schedules that interfered with their other jobs or lives. Plaintiff and other Hispanic employees complained to management to no avail as no actions were taken to prevent or remove this hostile work environment.

142.    At all relevant times, Defendants operated a business that discriminated against Plaintiffs on the basis of their national origin.

143.    Defendants willfully violated the NYCHRL, Administrative Code Title 8-107(13), as amended.

144.    Due to Defendants' violation of NYCHRL, as amended, on the basis of Defendants' discriminatory practices, Plaintiffs are entitled to recover from Defendants: (1) back pay, (2) front pay, (3) compensatory damages, (4) punitive damages and (5) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL and NYCHRL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due under the FLSA and the NYLL due to Defendants' policy of time shaving;

d.  An award of unpaid wages due under the NYLL due to Defendants' claiming an invalid tip credit;

e.  An award of unpaid spread of hours premium pursuant to the NYLL;

f.  An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages for all hours worked pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages for all hours worked pursuant to the NYLL;

i.  An award of back pay, compensatory damages and punitive damages due under the NYSHRL;

j.  An award of back pay, compensatory damages and punitive damages due under the NYCHRL;

k.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.  Designation of Plaintiffs as the Representatives of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n.  Designation of Plaintiffs as Representatives of the Class; and

o.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  New York, New York
        April 29, 2020

                                        Respectfully submitted,

                                        LEE LITIGATION GROUP, PLLC
                                        C.K. Lee, Esq. (CL 4086)
                                        Anne Seelig, Esq. (AS 3976)
                                        148 West 24th Street, 8th Floor
                                        New York, NY 10011
                                        Tel.: 212-465-1188
                                        Fax: 212-465-1181
                                        *Attorney for Plaintiffs, FLSA*
                                        *Collective Plaintiffs and the Class*

                                By: */s/ C.K. Lee*
                                        C.K. Lee